UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

vs.

ISAAC DENEL MEEKS (D-3),

        Defendant.
_____/

Criminal Case No.
10-CR-20388

HON. MARK A. GOLDSMITH

**OPINION AND ORDER DENYING DEFENDANT'S
MOTION TO SUPPRESS EVIDENCE AND TO REVIEW ORDER OF DETENTION**

Before the Court are Defendant Isaac Meeks' motion for a hearing to suppress evidence from the search of his alleged residence, principally pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978), and a motion "to re-open or review" the order of detention pending trial issued by the magistrate judge. For the reasons set forth below, the Court denies the motion to suppress and denies the request for pretrial release.

**I.**     **Factual background**

Meeks is charged with several drug and firearms offenses: (i) conspiracy to distribute and to possess with intent to distribute controlled substances in violation of 21 U.S.C. §§ 846 and 841(a)(1), (ii) possession with intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1), (iii) possession with intent to distribute heroin in violation of 21 U.S.C. § 841(a)(1), (iv) possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c), and (v) being

a felon in possession of firearm in violation of 18 U.S.C. § 922(g)(1).[1]  Docket Entry ("D.E.") 102-2 (first superceding indictment).

The charges stem from evidence seized during the search of 6722 Garden Drive in Mt. Morris, Michigan, conducted pursuant to the search warrant that Meeks challenges in the instant motion. The search warrant was issued in the course of a lengthy investigation into the drug trafficking activities of a group called the Dayton Mafia. D.E. 118-1 at 1. A team of law enforcement agents and task force officers, including FBI Special Agent Michael Wiggins, had been investigating the Dayton Mafia since November 2007. *Id.* at 7, 15 (Wiggins affidavit). As part of the investigation, law enforcement had obtained court authorization to intercept telephone communications of persons suspected of being members of the Dayton Mafia. The latest of these orders was signed on May 24, 2010 by the Honorable Sean Cox, United States District Judge for the Eastern District of Michigan, which authorized the wiretapping of suspected Dayton Mafia leader Lamonte Watson's phone for 30 days. D.E. 102-4 (order authorizing wiretapping).

The wiretap of Watson's phone captured a series of calls between Watson and Meeks during which Watson arranged a drug purchase from Meeks at 6722 Garden Drive, as attested to by Agent Wiggins. His affidavit presents the following testimony:

> On June 2, 2010, Lamonte Watson spoke to Isaac Meeks. . . . During the call, Meeks stated, "I told you I was putting something on the floor man." Watson later responded, "I can do like twelve for you." Investigators believe, based on training, experience, and previously intercepted calls between Isaac Meeks and Lamonte Watson, that Isaac Meeks was stating that he had a supplier who had drugs available and that Lamonte Watson agreed to supply an amount (12) of currency to purchase the drugs. After agreeing to supply the amount of currency Lamonte Watson

---

[1]The predicate crime for the felon-in-possession charge is Meeks' November 2006 state court conviction for attempted carrying of a concealed weapon, which is a felony and punishable by more than one year in prison. *See* D.E.1 at 4 (criminal complaint).

conveyed that he would meet Isaac Meeks. Isaac Meeks then directed Lamonte Watson to his "new crib" which he described as being on Garden Street off of Detroit.

At approximately 8:53 p.m. the same date, Isaac Meeks called Lamonte Watson back on [Watson's phone] and asked Lamonte Watson if he was on his way. Lamonte Watson responded, "I gotta go grab it." After the call, surveillance observed Lamonte Watson depart 1730 Wyoming, Flint, Michigan, and arrive at 2470 Bertha, Flint, Michigan.

At approximately 9:25 p.m. the same date, Isaac Meeks called Lamonte Watson again on [Watson's phone]. During this call, Lamonte Watson stated, "I'm putting it together now." At the time of the call, surveillance had placed Lamonte Watson at his residence, 2470 Bertha, Flint, Michigan. Investigators believe based on training, experience, and previously intercepted calls, that Lamonte Watson meant that he was collecting money that he had stored at 2470 Bertha. . . .

At approximately 9:44 p[.m]. on the same date, Lamonte Watson called Isaac Meeks and relayed that he was on his way. Isaac Meeks further described how to get to his residence at which time Lamonte Watson stated, ". . . Just be out there, I don't want to get an address on the phone." Law enforcement believes that Lamonte Watson was telling Isaac Meeks to be visible at his residence so Lamonte Watson could find him, and that he was attempting to avert possible law enforcement detection by not giving details over the phone.

At approximately 9:45 p.m., surveillance observed Lamonte Watson arrive at 6722 Garden, Mt. Morris, Michigan. Lamonte Watson had been surveilled driving to the Garden Street address directly after departing 2470 Bertha. . . .

At approximately 11:37 p.m. on the same date, Isaac Meeks called Lamonte Watson on [Watson's phone] and stated that he thought he left "some house keys" in Lamonte Watson's truck. Isaac Meeks further stated, "Yeah man. When I took that money out man. I think I set em on that seat man." Lamonte Watson could not locate the keys. Investigators understand that Isaac Meeks took the money from Lamonte Watson's truck while the[y] were at 6722 Garden Street. . . .

D.E. 118-1 at 65-67.

In addition to Meeks' phone calls with Watson, Wiggins' affidavit contained two other significant pieces of information related to Meeks. First, a confidential informant ("CS-6") had "observed Meeks with distributable amounts of heroin and cocaine over the last approximately eight

months and as recently as approximately two months ago." *Id.* at 65. Second, a "public source computer database" revealed that a woman named Rhonda Caldwell was a resident of 6722 Garden Drive. The affidavit refers to Caldwell as "Rhonda Caldwell, aka Rhonda Bowser, aka Rhonda Meeks" and states that "[i]nvestigators believe that Isaac Meeks resides at 6722 Garden" with her. *Id.* Meeks states in the instant motion that Rhonda is the mother of two of his children.

Based on the information contained in the Wiggins affidavit, on June 4, 2010, United States Magistrate Judge Michael Hluchaniuk of the Eastern District of Michigan authorized a search of 6722 Garden. *Id.* at 1. When agents and task force officers searched the residence on June 7, 2010, they seized: (i) about a kilogram of what was believed to be cocaine, (ii) about a pound of what was believed to be heroin, (iii) an AK-47 assault rifle with a large capacity drum magazine containing 88 rounds of ammunition, and (iv) a 9-mm semiautomatic handgun. D.E. 6 at 2 (Order of Detention). They also seized a Michigan vehicle title in Meeks' name and pictures appearing to show Meeks holding the weapons and ammunition. *Id.*; D.E. 1 at 3.

Meeks was arrested on June 9, 2010. A detention hearing was held on June 14, 2010, and the next day Magistrate Judge Hluchaniuk issued an order of detention pending trial. On August 25, 2010, counsel for Meeks filed the instant motion, entitled a "Motion and Request for a *Franks* Hearing to Suppress Evidence Obtained from a Defective Affidavit and Warrant Allowing a Search and Seizure on June 7, 2010 at 6722 Garden Drive and Motion to Re-Open/Review Order of Detention." D.E. 102. The Government timely responded on September 15, 2010, and this Court held a hearing on the motions on September 21, 2010.

4

## II.    Discussion

### A.    Parties' arguments

Meeks makes essentially three arguments in support of his motion to suppress. First, the search warrant contains material omissions in violation of *Franks*.[2] Second, the warrant was invalid because it was based on stale information. Third, the warrant was invalid because it was based on wiretap evidence secured pursuant to a court order that relied on legally flawed evidence.

With regard to the *Franks* violation, Meeks contends that three pieces of information were improperly omitted from the affidavit in support of the warrant: (i) the fact that the investigators acted on information provided by a man who had reason to retaliate against Meeks, (ii) the fact that the Garden Drive residence and Meeks himself had not been subjects of the investigation for as long as other premises and alleged co-conspirators mentioned in the affidavit, and (iii) the fact that confidential informant CS-6 was a felon.

Although the second and third pieces of information are self-explanatory, the first requires some additional explanation. Meeks' argument on point (i) is not a model of clarity; however, the Court understands Meeks' argument to be that the affidavit failed to disclose that the investigation of Meeks was based on information supplied by a man who held a grudge against Meeks. Meeks asserts that in the course of pursuing their investigation against him, Agent Wiggins and a United States Drug Enforcement Administration officer, Officer Kendall, "act[ed] upon" information provided by a man named Raymond Furlough. D.E. 102 at 14 (motion to suppress). Meeks explains

---

[2]Although Meeks' motion contends that the affidavit contained knowingly false statements or statements made with disregard for the truth, counsel clarified, at oral argument, that Meeks' position is not that the affidavit contained affirmative misstatements, but rather that it improperly *omitted* key information.

5

that around 2005 "a . . . shooting occurred between" Furlough and Meeks that was reported to the authorities, and that as a result, Furlough had a personal grudge against Meeks and was looking to retaliate against him. *Id*. Meeks contends that evidence of his contention that Furlough and law enforcement investigators were working together against him is the fact that investigators searching the Garden Drive residence removed documents and other evidence related to the prior shooting between Furlough and Meeks.[3] *Id*.

With regard to the staleness claim, Meeks contends that the June 4, 2010 search warrant affidavit contained stale information, specifically, the confidential informant's observation that Meeks had distributable amounts of heroin and cocaine as recently as two months before.

With regard to the wiretap, Meeks argues that Agent Wiggins failed to satisfy the requirement of showing that other investigative techniques had been exhausted.

In addition to his various suppression arguments, Meeks also argues that this Court should reconsider the order of detention entered against him. He contends that the order should be

---

[3]In addition to the arguments addressed above, Meeks makes a number of factual statements in his written motion without explaining the legal significance of the statements. For instance, Meeks simply asserts that he had not resided at the Garden Drive home for the last seven years, and that he owned a home on 1717 Concord, without explaining why these facts, even if true, entitle him to relief. Meeks also asserts several legal conclusions without citing legal authority or record evidence in support. For example, Meeks asserts without argument that there was a lack of nexus between the place to be searched and the evidence sought, and that he is entitled to have the indictment quashed as based upon unlawfully obtained evidence.

Because none of these points was sufficiently developed or supported, the Court need not, and will not, address them. *See McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir.1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in a most skeletal way, leaving the court to . . . put flesh on its bones.") (citation omitted); *Crocker v. Comm'r of Soc. Sec.*, No. 1:08-CV-1091, 2010 WL 882831 at *6 (W.D. Mich. Mar 9, 2010) ("This court need not make the lawyer's case by scouring the party's various submissions to piece together appropriate arguments.") (citation omitted).

reconsidered because of "the weight of evidence" favoring his innocence, his "excellent" prior criminal history record, the absence of prior convictions related to substance abuse, his longstanding community and family ties, and the potential difficulties his counsel will experience in preparing for trial if he remains imprisoned. *Id.* at 20.

The Government responds that Meeks has not met the requirements to obtain a *Franks* hearing. D.E. 118 at 4-7 (response to motion). It contends that Meeks never articulated any specific affidavit statement that he contends is untrue, and that Meeks' asserted omissions are unfounded. In particular, the Government argues that (i) neither Raymond Furlough nor Officer Kendall provided any information used in the affidavits supporting the search warrant and wiretap, and (ii) Officer Kendall was not even a part of the law enforcement team that was aware of the wiretaps. The Government contends that there was probable cause for the warrant, and in any event, the good faith exception would prevent application of the exclusionary rule. With regard to Meeks' other claims, the Government maintains that the judges involved followed the requirements of 18 U.S.C. § 2518 in authorizing the wiretap and followed the requirements of 18 U.S.C. § 3142(g) in ordering Meeks detained.

**B.     Analysis**

**1.     Relief under *Franks***

In the absence of certain defined exceptions, the Fourth Amendment permits a search only upon issuance of a valid warrant. *See*, *e.g.*, *Franks*, 438 U.S. at 164. Where the affidavit in support of the warrant contains a "false statement [made] knowingly and intentionally, or with reckless disregard for the truth" and if, "with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause," the Supreme Court held in *Franks* that

7

"the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit." *Id.* at 155-56.

The *Franks* Court also explained when an evidentiary hearing is warranted:

> There is, of course, a presumption of validity with respect to the affidavit supporting the search warrant. To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained. Allegations of negligence or innocent mistake are insufficient. The deliberate falsity or reckless disregard whose impeachment is permitted today is only that of the affiant, not of any nongovernmental informant.

*Id.* at 171.

In addition, where the defendant alleges that the affidavit contains material *omissions* – as opposed to affirmative misrepresentations – the defendant faces a "higher bar." *United States v. Fowler*, 535 F.3d 408, 415 (6th Cir. 2008). As the Sixth Circuit explained in *United States v. Graham*, 275 F.3d 490, 506 (6th Cir. 2001),

> [a]s to . . . allegedly material omissions, we have held that omissions "are not immune from inquiry under *Franks*, [but] we have recognized that an affidavit which omits potentially exculpatory information is less likely to present a question of impermissible official conduct than one which affirmatively includes false information." *United States v. Atkin*, 107 F.3d 1213, 1217 (6th Cir.1997). Indeed, a *Franks* hearing is only merited in cases of omissions in "rare instances." *Mays v. City of Dayton*, 134 F.3d 809, 815 (6th Cir.), *cert. denied*, 524 U.S. 942, 118 S. Ct. 2352, 141 L. Ed. 2d 722 (1998). "This is so because an allegation of omission potentially opens officers to endless conjecture about investigative leads, fragments of information, or other matter that might, if included, have redounded to defendant's benefit." *Atkin*, 107 F.3d at 1217 (internal quotation omitted).

The *Graham* decision also explains the analysis specific to omissions: "To merit a hearing, the defendant must make a preliminary showing that the affiant engaged in deliberate or reckless

disregard of the truth in omitting the information from the affidavit. The court must then consider the affidavit along with the omitted portions and determine whether probable cause still exists." *Id.* (citation omitted).

With regard to the probable cause prong of the *Franks* inquiry, "probable cause exists if the facts and circumstances known to the officer warrant a prudent [person] in believing that the offense has been committed." *Brooks v. Rothe*, 577 F.3d 701, 706 (6th Cir. 2009) (quoting *Henry v. United States*, 361 U.S. 98, 102, (1959)). "A finding of probable cause does not require evidence that is completely convincing or even evidence that would be admissible at trial; all that is required is that the evidence be sufficient to lead a reasonable officer to conclude that the arrestee has committed or is committing a crime." *Everson v. Leis*, 556 F.3d 484, 498-99 (6th Cir. 2009) (citation omitted).

Finally, Meeks bears the burden of showing entitlement to a *Franks* hearing. *See United States v. Mastromatteo*, 538 F.3d 535, 545 (6th Cir. 2008) (defendant must "make[] a substantial preliminary showing" of affidavit content in violation of *Franks*); *United States v. Abboud*, 438 F.3d 554, 574 (6th Cir. 2006) (the "burden is on the defendant to show such falsehoods in the affidavit").

In light of these standards, it is clear that Meeks' claim should be rejected without an evidentiary hearing. First, Meeks has presented none of the materials – such as an offer of proof, affidavits, or otherwise reliable statements of witnesses – that the Supreme Court held were necessary to warrant a hearing. *Franks*, 438 U.S. at 171. Second, setting aside Meeks' failure to present record evidence, the Court's independent review of the record evidence reveals that it does not support Meeks' claims. Third, Meeks fails to even allege that Officer Wiggins acted with the requisite mens rea, *i.e.*, deliberate falsity or reckless disregard, as opposed to merely acting negligently or making an innocent mistake. *Id*.

9

The Court examines Meeks' claims one at a time. As to Meeks' confidential source claim, Agent Wiggins' affidavit *did* state that the confidential source was a felon. D.E. 102-5 at 7. Thus, this claim is demonstrably false. As to Meeks' allegations concerning Raymond Furlough and Officer Kendall, Meeks offers nothing to rebut the Government's assertion that neither Furlough nor Kendall contributed information used to secure the search warrant or wiretap. Without evidence of any involvement by Furlough and/or Kendall, Meeks cannot show that Agent Wiggins made any omission regarding them. It necessarily follows that Meeks also fails to show that any such "omission" was done deliberately or with reckless disregard for the truth. Finally, as to Meeks' allegation concerning the fact that the he and the Garden Drive residence had not been subjects of the investigation from the first day, Meeks fails to explain how this information would be exculpatory and why omitting this information from the affidavit is tantamount to a deliberate falsehood or reckless disregard for the truth. Indeed, in multiple-year investigations such as this, it is only logical that authorities will gain information on new people and places over time. If Meeks means to argue that the affidavit misleadingly implies that Meeks and the Garden Drive residence were involved in all aspects of wrongdoing at all times described in the affidavit, this is simply incorrect. The narrative portion of the 71-page affidavit describes with specificity which parties and premises were involved in which events. *See* D.E. 118-1 at 20-69. Accordingly, Meeks' various contentions fall far short of satisfying the requisites for an evidentiary hearing.

Finally, even assuming, hypothetically, that the affidavit's information was improper in the manner Meeks alleges, he would still not be entitled to relief. The most damning facts in the affidavit are the calls between Meeks and Watson narrating their apparent drug deal, along with the contemporaneous surveillance observations in the affidavit. Those conversations and observations

depict Watson going to the Garden Drive residence to purchase drugs from Meeks. This Court concludes that, even adding any "omitted" information to the affidavit, this key evidence would establish probable cause for the search.[4]

Thus, Meeks is not entitled to an evidentiary hearing or any other relief under *Franks*.

### 2. Staleness of warrant information

Meeks' argument that certain information in the June 4, 2010 search warrant affidavit – that the confidential informant saw Meeks with distributable amounts of heroin – was stale is also unavailing. The affidavit stated that a confidential informant had "observed Meeks with distributable amounts of heroin and cocaine over the last approximately eight months and as recently as approximately two months ago." D.E. 102-5 at 11. The question before this Court, then, is whether a tip that was "approximately two months" old is stale.

As the Sixth Circuit explained in *United States v. Thomas*, 605 F.3d 300, 309-10 (6th Cir. 2010),

> "[a] determination of whether an informant's tip is stale rests on several factors including 'the character of the crime (chance encounter in the night or regenerating conspiracy?), the criminal (nomadic or entrenched?), the thing to be seized (perishable and easily transferable or of enduring utility to its holder?), the place to be searched (mere criminal forum of convenience or secure operational base?).'" [*United States v.*] *Hammond*, 351 F.3d [765, 771 (6th Cir. 2003)] (quoting *United States v. Greene*, 250 F.3d 471, 480-81 (6th Cir. 2001)). The question of staleness, then, depends on the "inherent nature of the crime." *United States v. Henson*, 848 F.2d 1374, 1382 (6th Cir. 1988) (quoting *United States v. Haimowitz*, 706 F.2d 1549, 1554-55 (11th Cir. 1983)).

When the evidence concerns a long-term criminal operation, greater lapses of time between the

---

[4]Because the Court finds that Meeks is not entitled to relief under *Franks*, the Court need not address the issue raised by the Government that Meeks had not established that he had an expectation of privacy in the Garden Drive house.

information relied upon and the request for a search warrant are permitted. *See id.*; *United States v. Greany*, 929 F.2d 523, 525 (9th Cir. 1991). Courts have concluded that the distribution of illegal drugs is a long-term criminal operation. *See e.g., United States v. Spikes*, 158 F.3d 913, 924 (6th Cir. 1998) (manufacture and trafficking of crack cocaine over four years a "continuing criminal enterprise"); *United States v. Rowell*, 903 F.2d 899, 903 (2nd Cir.1990) ("[n]arcotics conspiracies are the very paradigm of the continuing enterprises for which the courts have relaxed the temporal requirements of non-staleness") (quotation marks and citation omitted). In addition, stale information may be "refreshed" if the affidavit contains recent information that corroborates the otherwise stale information. *Thomas*, 605 F.3d at 310.

Turning to the instant case, the Court concludes that in light of the ongoing nature of the drug distribution conspiracy, as reflected in Agent Wiggins' affidavit, the two-month-old confidential informant's tip was not stale. *See Rowell*, 903 F.2d at 903 (eighteen-month-old information not stale because evidence was of a drug distribution conspiracy); *United States v. Word*, 806 F.2d 658, 662 (6th Cir. 1986) (where defendant was convicted for selling prescriptions of controlled substances, four-to-five-month-old information in affidavit not stale where, *inter alia*, "the events alleged in the affidavit were of a continuing nature"); *see also Spikes*, 158 F.3d at 924 (evidence up to four years old sufficient to support probable cause where affidavit contained more recent information demonstrating that drug trafficking and manufacture was of an ongoing and continuing nature).

Even if the informant's information were dated, that information would have been refreshed by other evidence in the affidavit, *i.e.*, the long excerpt from the wiretap, depicting the drug sale from Meeks to Watson, which had occurred on June 2, 2010, a mere two days before the affidavit was sworn. In other words, the two-month-old information that Meeks had a distributable amount

of heroin was refreshed by the two-day-old evidence that Meeks necessarily had enough drugs to sell some to Watson. *Compare Thomas*, 605 F.3d at 310 (eight-month-old evidence not stale where evidence was "refreshed" by more recent corroborating information in the affidavit). Thus, Meeks' staleness claim fails.[5]

### 3. Interception of phone communications

Because Meeks' other suppression argument challenges the authorization of the wiretap, the Court next turns to the legitimacy of the authorization to intercept the calls between Meeks and Watson.

Title 18 U.S.C. § 2518 sets out the procedure for intercepting "wire, oral, or electronic communications." The statute requires that an application to intercept communications include, *inter alia*,

> (b) a full and complete statement of the facts and circumstances relied upon by the applicant, to justify his belief that an order should be issued, including (i) details as to the particular offense that has been, is being, or is about to be committed, (ii) except as provided in subsection (11), a particular description of the nature and location of the facilities from which or the place where the communication is to be intercepted, (iii) a particular description of the type of communications sought to be intercepted, (iv) the identity of the person, if known, committing the offense and whose communications are to be intercepted;
>
> (c) a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous;

18 U.S.C. § 2518(1)(b)-(c).

---

[5]To the extent Meeks also alleges that the May 24, 2010 affidavit in support of the wiretap was "stale" because it contained some information submitted in prior affidavits requesting wiretap authorizations as early as February 2010, Meeks has not explained what specific information in the affidavit was stale or why, and the Court rejects the claim on this basis. *See McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) (not sufficient for a party to merely mention a possible argument without development).

13

Meeks' argument that the affidavit in support of the wiretap does not explain that other investigative procedures had been exhausted is plainly incorrect. The affidavit explains over several pages the various techniques that were used, with limited results. *See* D.E. 102-3 at 36-45 (affidavit in support of wiretap application). The affidavit describes how conspiracy members had become aware of physical surveillance and modified their behavior. *Id*. at 36-38. The affidavit describes how conspiracy members had installed surveillance cameras on their residences, and that attempted trash pickups were not successful. *Id*. at 42. The exhaustion requirement was plainly met.

### 4. Detention Order

Because Meeks does not contend that his arguments consist of new information not known to him at the time of the detention hearing, the Court construes his motion for pretrial release as one for "revocation or amendment" of the detention order under 18 U.S.C. § 3145(b).[6] The statute provides:

> (b) Review of a detention order.--If a person is ordered detained by a magistrate judge, or by a person other than a judge of a court having original jurisdiction over the offense and other than a Federal appellate court, the person may file, with the court having original jurisdiction over the offense, a motion for revocation or amendment of the order. The motion shall be determined promptly.

Review under 18 U.S.C. § 3145(b) is de novo. *United States v. Rueben*, 974 F.2d 580, 585-86 (5th Cir. 1992) ("When the district court acts on a motion to revoke or amend a magistrate's pretrial detention order, the district court acts de novo and must make an independent determination of the proper pretrial detention or conditions for release.") (citation omitted).

---

[6]*See United States v. Posada Carriles*, 481 F. Supp. 2d 792, 795 (W.D. Tex. 2007) (a defendant has two avenues to pursue reconsideration of a detention order: (i) reopening under 18 U.S.C. § 3142(f) which requires information that was "not known to the movant at the time of the hearing," and (ii) revocation under 18 U.S.C. § 3145(b) which "does not require that new information be available before a detention order can be reconsidered or revoked").

The Bail Reform Act, 18 U.S.C. § 3142, governs the release or detention of a defendant pending trial. Under the Act, a defendant may be detained pending trial only if "the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e). A judicial officer's finding of dangerousness must be "supported by clear and convincing evidence." 18 U.S.C. § 3142(f)(2)(B).

Meeks' drug charges subject him to a maximum prison term of more than ten years. 21 U.S.C. § 841(b). Thus, under the Act, he is subject to a presumption in favor of detention:

> (3) Subject to rebuttal by the person, it shall be presumed that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community if the judicial officer finds that there is probable cause to believe that the person committed--
>
> > (A) an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act (21 U.S.C. 801 et seq.), the Controlled Substances Import and Export Act (21 U.S.C. 951 et seq.), or chapter 705 of title 46;

18 U.S.C. § 3142(e)(3)(A).[7] This presumption imposes on a defendant a "burden of production" to show that he does not pose a danger to the community and does not pose a risk of flight. *See Stone*, 608 F.3d at 945. Given that the burden of production is "not a heavy one," *id*., and in light of Meeks' longstanding family ties to the community, this Court concludes that Meeks has successfully rebutted the presumption. However, consistent with Sixth Circuit case law, the presumption in favor of detention does not disappear, but is a factor to be considered among the others included in 18

---

[7]The probable cause requirement of 18 U.S.C. § 3142(e)(3) is met by the fact that Meeks was indicted for a qualifying crime. *See United States v. Stone*, 608 F.3d 939, 945 (6th Cir. 2010) ("A grand jury indictment, by itself, establishes probable cause to believe that a defendant committed the crime with which he is charged.")

U.S.C. § 3142(g). *See Stone*, 608 F.3d at 945-46. Thus, this Court considers the presumption along with:

> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
>
> (2) the weight of the evidence against the person;
>
> (3) the history and characteristics of the person, including--
>
>> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>>
>> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
>
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. . . .

18 U.S.C. § 3142(g).

Considering these factors, the Court concludes that there are no conditions (or combination of conditions) of release that would reasonably assure the safety of the community. The Court reaches this conclusion in light of the serious nature of the offense charged as demonstrated by the lengthy prison term Meeks faces, the significant amounts of controlled substances involved, the presence of firearms, and Meeks' not-insignificant criminal history. The Court notes the high quality of evidence against Meeks concerning firearms, in particular, photographs of him holding the seized weapons, including an "AK-47 style" rifle. D.E. 118 at 18. Although Meeks argues that he would not be a threat if released because he would not have possession of the firearms that were

16

seized, Meeks has already demonstrated an apparent ability to acquire illegal firearms. Meeks offers no facts that reassure the Court that he would not reacquire illegal firearms. In addition, the fact that Meeks previously disregarded the grave danger to the community that the weapons posed speaks to his character and a lack of serious regard for the community's safety and well-being. Therefore, pretrial release would not be appropriate.

**III.  Conclusion**

For the reasons explained above, Meeks' motion to suppress evidence is denied. The motion for pretrial release is denied; the detention order previously entered remains in place.

SO ORDERED.

Dated: October 15, 2010         s/Mark A. Goldsmith
Flint, Michigan                 MARK A. GOLDSMITH
                                United States District Judge

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email addresses or First Class U.S. mail disclosed on the Notice of Electronic Filing on October 15, 2010.

                                s/Deborah J. Goltz
                                DEBORAH J. GOLTZ
                                Case Manager