# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 10-20388 |
| Plaintiff, | Hon. Linda V. Parker |
| -vs- | |
| ISAAC DENEL MEEKS, | |
| Defendant. | |
| _____/ | |

### DEFENDANT'S SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION FOR COMPASSIONATE RELEASE

## I. Introduction

Defendant, Isaac Meeks, currently 53 years old, originally received a sentence of over 15 years (181 months) for his involvement in a drug conspiracy (121 months) and possession of a firearm in furtherance of that conspiracy (consecutive 60 months).[1]  Mr. Meeks is currently incarcerated at USP Lewisburg and has a release date of April 27, 2023.   Thus, he has served *over ten years*, i.e., approximately 80% of the time he is expected to serve.

---

[1] Defendant's sentence was later reduced to 180 months.

Defendant has filed a *pro se* motion for compassionate release, and this Court has appointed undersigned counsel. On June 22, 2020, this Court denied that motion without prejudice because Defendant was unable to prove that he had exhausted his administrative remedies. Counsel has now received written proof that Defendant has exhausted his remedies and that more than 30 days have passed. See Exhibit A, discussed below. Therefore, Defendant's motion is properly before the Court; the instant supplemental brief is filed pursuant to the Court's order dated September 1, 2020 (ECF No. 861).

Under the controlling statute, 18 U.S.C. §3582(c)(1), Defendant submits that he (1) has exhausted his administrative remedies with the Bureau of Prisons (BOP); and (2) can demonstrate, after consideration of the policy statement in U.S.S.G. §1B1.13 and the sentencing factors in 18 U.S.C. §3553(a), extraordinary and compelling reasons warranting a sentence reduction to time served.

## II. Administrative Exhaustion

Under *United States v Alam*, 960 F.3d 831 (6th Cir. 2020), the statute's requirement of administrative exhaustion is mandatory. Defendant pursued his administrative remedies with the warden months ago but has only recently become able to prove it. The documents attached hereto as Exhibit A (petition for compassionate release and responsive memorandum from warden), received by counsel on August 31, 2020, demonstrate that Mr. Meeks requested relief from the

warden of USP Lewisburg in May 2020 and was in fact denied. This meets the requirement of the compassionate release statute, 18 U.S.C. §3582(c)(1)(A).

### III. Extraordinary and Compelling Reasons

#### A. Prison Conditions

This Court may order Mr. Meeks released if "extraordinary and compelling" reasons exist. Here, Mr. Meeks has pre-existing health conditions which, in a global pandemic, warrant compassionate release. In particular, Mr. Meeks's current health conditions and incarceration during this pandemic "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which [he] is not expected to recover." U.S.S.G. § 1B1.13, application note 1(A)(ii). Courts have found release in these circumstances consistent with this policy statement. *See, e.g., United States v. Reddy,* No. 13-CR-20358, 2020 WL 2320093, at *5 (E.D. Mich. May 11, 2020); *United States v. Amarrah,* No. 17-20464, 2020 WL 2220008, at *6 (E.D. Mich. May 7, 2020).

Defendant also presents "Other Reasons" under U.S.S.G. § 1B1.13, application note 1(D), warranting compassionate release, *Miller v. United States,* No. CR 16-20222-1, 2020 WL 1814084, at *3 (E.D. Mich. Apr. 9, 2020), because while the COVID-19 pandemic is devastating in every region it invades, prison populations are subject to heightened vulnerability. *See, e.g.*, Danielle Ivory, *"We*

3

*Are Not a Hospital": A Prison Braces for the Coronavirus*, N.Y. Times (Mar. 17, 2020), https://www.nytimes.com/2020/03/17/us/coronavirus-prisons-jails.html (citing densely populated living conditions, shortage of masks, soap, and hand sanitizer, and the inability to routinely disinfect surfaces and maintain safe distances between inmates and guards as reasons prisoners are at increased risk of infection); Courtney Bublé, *Federal Prisons Pose 'Imminent Danger' in Spreading COVID-19, Union Says*, GOVERNMENT EXECUTIVE (Apr. 6, 2020), https://www.govexec.com/oversight/2020/04/federal-prisons-pose-imminent-danger-spreading-covid-19-union-says/164390/ (detailing a prison workers' union complaint to OSHA complaining of "imminent danger" due to the BOP's failure to follow national safety guidelines).

The heightened vulnerability is echoed by the Center for Disease Control and Prevention ("CDC") representation that jails and prisons pose an especially high risk for those who are within their walls. *See Interim Guidance on Mgmt. of Coronavirus Disease 2019 (COVID-19) in Correctional and Detention Facilities*, Ctr. For Disease Control, at 2 (Mar. 23, 2020), available at https://www.cdc.gov/coronavirus/2019-ncov/downloads/guidance-correctional-detention.pdf. The CDC has explained that "[t]here are many opportunities for COVID-19 to be introduced into a correctional or detention facility, including daily staff ingress and egress; transfer of incarcerated/detained persons between facilities

and systems, to court appearances, and to outside medical visits; and visits from family, legal representatives, and other community members." CDC, *Guidance for Correctional & Detention Facilities*, https://www.cdc.gov/coronavirus/2019-ncov/community/correction-detention/guidance-correctional-detention.html

Nationally, BOP, in its handling of the coronavirus pandemic, has not been fully able to contain its spread.  As of September 21, 2020, nationwide there have been 2,022 federal inmates and 669 BOP staff who have tested positive for COVID-19.  And, there have been over 121 federal inmate deaths, and 2 BOP staff member deaths due to the coronavirus.  https://www.bop.gov/coronavirus

Although COVID-19 was not initially a major problem at USP Lewisburg, that has changed recently.  In a "Notice to Inmates" dated August 6, 2020 (attached hereto as Exhibit B), the same warden who had denied Defendant's request for administrative relief begins as follows:  "As of Thursday, July 31, 2020, we have begun to see positive COVID inmates within the institution."  In addition, the BOP web site lists the following numbers for USP Lewisburg as of September 21, 2020: 10 "staff positive," 84 "inmates recovered," and 1 "staff recovered."  https://www.bop.gov/coronavirus

## Defendant's Health

Mr. Meeks is no longer a young man; he turned 53 years old in August. And he is more susceptible than most prisoners to COVID-19 due to his long-term hypertension (high blood pressure) and also his obesity. Even back when he was sentenced, he was taking medication for hypertension. See PSR ¶53. Mr. Meeks's BOP medical records confirm his hypertension. He now takes at least four different medications for it: amlodipine, aspirin, hydrochlorothiazide, and lisinopril. See Exhibit C (prison medical records from May 2020), pages 1, 3. In addition, Mr. Meeks is 5'10" and approximately 234 pounds; his "body mass index" (BMI) of 33.6 (see Exhibit C, page 2) meets the definition for obesity. See https://webmd.com/bmi

According to the CDC, having obesity, defined as a BMI of 30 or above, increases the risk of severe illness from COVID-19. https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html#obesity  Other courts have noted a person's BMI in granting compassionate release in light of the COVID-19 pandemic. *See, e.g., United States v. Dawson*, No. 18-40085-HLT, 2020 WL 1812270, at *5 (D. Kan. Apr. 9, 2020) ("The court finds that Mr. Dawson has established that his obesity puts him at an increased risk for severe illness if he were to contract COVID-19, which weighs in favor of finding exceptional reasons.").

## Defendant's Health

Mr. Meeks is no longer a young man; he turned 53 years old in August. And he is more susceptible than most prisoners to COVID-19 due to his long-term hypertension (high blood pressure) and also his obesity. Even back when he was sentenced, he was taking medication for hypertension. See PSR ¶53. Mr. Meeks's BOP medical records confirm his hypertension. He now takes at least four different medications for it: amlodipine, aspirin, hydrochlorothiazide, and lisinopril. See Exhibit C (prison medical records from May 2020), pages 1, 3. In addition, Mr. Meeks is 5'10" and approximately 234 pounds; his "body mass index" (BMI) of 33.6 (see Exhibit C, page 2) meets the definition for obesity. See https://webmd.com/bmi

According to the CDC, having obesity, defined as a BMI of 30 or above, increases the risk of severe illness from COVID-19. https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html#obesity  Other courts have noted a person's BMI in granting compassionate release in light of the COVID-19 pandemic. *See, e.g., United States v. Dawson*, No. 18-40085-HLT, 2020 WL 1812270, at *5 (D. Kan. Apr. 9, 2020) ("The court finds that Mr. Dawson has established that his obesity puts him at an increased risk for severe illness if he were to contract COVID-19, which weighs in favor of finding exceptional reasons.").

Either of these conditions (hypertension or obesity) would be "extraordinary and compelling" enough to warrant release, but the combination makes Mr. Meeks's health risks dire. The CDC states: "The more underlying medical conditions someone has, the greater their risk is for severe illness from COVID-19." CDC, *People of Any Age with Underlying Medical Conditions* (2020). https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html

### IV. Danger to the Community

At the time he was convicted in this case, Mr. Meeks had a criminal history category of I; the only prior that scored was one point for an attempt CCW in Flint when he was 38 years old. Even his priors that were too old to count were all misdemeanors. See PSR ¶¶36-41.

As far as the underlying offense, it involved a rather large drug distribution conspiracy. But, according to the presentence report (PSR), Mr. Meeks was merely one of a "lower-level group of dealers" who worked for the lead defendant. As stated there, "ISAAC MEEKS bought from [the lead defendant] but was not heavily involved in the conspiracy." PSR ¶18. Moreover, he "was not known to be part of the conspiracy until May 2010," which was about a month before he was arrested on a complaint. PSR ¶19.

Defendant understands that this is a drug and gun case, and that he received a

15 year sentence. But this is far from the worst such case, and Mr. Meeks does not appear to be implicated in any violent conduct. With his limited criminal record and limited involvement in the conspiracy, Mr. Meeks does not represent a "danger to the community" under 18 U.S.C. §3582(c)(1)(A)(ii).

### V. 18 U.S.C. §3553(a) Factors

The final points to be considered for compassionate release are the sentencing factors set forth in 18 U.S.C. §3553(a). These factors weigh in Defendant's favor.

Under 3553(a)(1), the nature and circumstances of the underlying offense are discussed above – not particularly egregious or violent. See PSR ¶¶15-20. Defendant's criminal history is relatively tame, and his family history is supportive. See Exhibit D (letters from family members). In fact, his daughter Aasiyah represents his release plan when he gets out of prison. His daughter Sequana has been a steady, reliable source for both Mr. Meeks and undersigned counsel. Of course, Mr. Meeks had his battles with substance abuse (PSR ¶¶55-57), but after 10 years of incarceration and various classes, there is reason to believe that he can remain clean on the outside.

The purposes of sentencing set forth in §3553(a)(2), including reflecting offense seriousness; promoting respect, just punishment, and deterrence; and protecting the public, will not be significantly enhanced by keeping Mr. Meeks in a COVID-infested prison system for two more years. At the age of 53, in the age of

COVID, a show of "compassion" is appropriate. With his history and health problems, Mr. Meeks has done enough prison time. *See United States v Haynes*, No. 14-20083, 2020 WL 4696601 (E.D. Mich. August 13, 2020) (48 year old inmate granted compassionate release based in significant part upon obesity and hypertension, noting at page 2 the CDC position that persons with these conditions are three times more likely to be hospitalized if they contract COVID-19).

## VI. Conclusion

Therefore, Defendant requests that this Court grant compassionate release and reduce his sentence to time served, with home confinement (at his daughter's house) as part of supervised release. In the alternative, this court could issue a letter to the BOP recommending that Defendant be released to home confinement.

Respectfully Submitted,

s/David A. Koelzer
Federal Community Defender
Eastern District of Michigan
111 E. Court St., Suite L-100
Flint, Michigan 48502
(810) 232-3600
david_koelzer@fd.org

Dated: September 22, 2020

## **CERTIFICATE OF SERVICE**

On September 22, 2020, I filed the foregoing document using the ECF system, which will send notification of the filing to counsel for the Government, AUSA Craig F. Wininger.

s/David A. Koelzer